CORNELIUS MADDEN, an Infant, by FRANK MADDEN, His Guardian ad Litem, Respondent, *v.* CHARLES E. CHALMERS, as Receiver of the SECOND AVENUE RAILROAD COMPANY, Appellant.

FRANK MADDEN, Respondent, *v.* CHARLES E. CHALMERS, as Receiver of the SECOND AVENUE RAILROAD COMPANY, Appellant.

First Department, February 26, 1926.

Street railways — action by infant five years old for injuries suffered when street car struck him while he was crossing street in middle of block and action by father for loss of services — case was submitted to jury on plaintiffs' evidence — plaintiffs' proof showed both that motorman was not watching street and that boy's foot caught in track as he was crossing — defendant not liable if accident was caused by boy catching foot in track, but is liable if motorman was negligent in failing to observe track — general verdict cannot stand — verdict for $5,000 for father is excessive.

In an action by an infant to recover for injuries suffered when he was struck by one of defendant's street cars while he was crossing a street in the middle of a block, and in an action by the father for loss of services, a general verdict of the jury in favor of the plaintiffs cannot stand, where it appears that the case was submitted to the jury on plaintiffs' testimony which tended to show both that the accident was caused by the boy catching his foot in the street car track as he was endeavoring to cross the track in front of the car, and also that the motorman of the car was negligent in that he was looking at the coin box and was not observing the street in front of his car.

The defendant would not be liable if the accident was caused by the boy catching his foot in the track, but it might be held liable on the ground that the motorman was negligent in failing to exercise the proper degree of care by fixing his attention upon the street in front of the car, and since it is impossible to determine upon which theory the jury returned the verdict, it must be set aside.

The verdict of $5,000 in the action by the father of the boy to recover for loss of services is excessive, and it would seem that $1,500 would be ample to cover the father's damages.

APPEAL in each of the above-entitled actions by the defendant Charles E. Chalmers, as receiver of the Second Avenue Railroad Company, from a judgment of the Supreme Court in favor of the respective plaintiffs, entered in the office of the clerk of the county of New York on the 4th day of December, 1923, upon the verdict

of a jury in the first above-entitled action for $15,000, and in the second above-entitled action for $5,000, and also from an order entered in each action on the 3d day of December, 1923, denying defendant's motion for a new trial made upon the minutes.

*Charles H. Tuttle* [*Carl E. Peterson* with him on the brief], for the appellant.

*Morris Lavitt* [*George F. Hickey* of counsel], for the respondents.

McAVOY, J. There are two causes litigated here, the principal one of which is an action by an infant for damages incurred through the negligence of the defendant, the receiver of the Second Avenue Railroad Company, and the other a suit by the infant's father for loss of his services. The infant recovered $15,000 and the father $5,000.

The defendant receiver contends that the proof shows that there was no negligence shown on the part of the motorman of the car which caused the damage, and that there was contributory negligence upon the part of the boy who was injured, if he was *sui juris;* and if *non sui juris*, that there was negligence upon the part of his mother imputable to him.

The accident occurred on Second avenue between Eighty-third and Eighty-fourth streets. It is described by four eye witnesses: one a police officer who rode on the front platform of the car which struck the boy, one a young girl who was on the sidewalk near the scene of the accident wheeling a perambulator, another a young girl who sat in a window overlooking the scene, and the fourth the mother of this girl, who occupied another window in the same apartment. The witnesses differed as to the manner of the happening of the accident. The two girls, Miss Betancourt and Miss Kelly, said that the boy caught his foot in one of the rails of the west track and was unable to release it when the car was about fifteen feet away from him; and Mrs. Kelly, the mother of the other witness of the same name, and the police officer on the forward platform of the car, did not notice that the boy's foot was caught in the rail at all. The boy was over five years of age when he was injured. He had been sent down stairs from the apartment in which he lived with his mother and six other children, when they were on their way back to school after lunch on the afternoon of March 11, 1921. He was told to wait at the doorway for the return of his eldest sister, who was expected home in a few minutes. Instead of remaining at the doorway, he crossed Second avenue from the west to the east where there was a sand pile in the roadway at which some other children were playing. He spent a few minutes there and then started to return

to the west side of the avenue in a slanting or diagonal direction in a southwesterly course. According to the proof most favorable to him, when he reached the north-bound track, the car was at the north side of Eighty-fourth street; and when he reached the easterly rail of the south-bound track, the car was about fifteen feet away from him. He caught his foot in the rail, according to the story of two of the witnesses; but whether he did or not, the motorman did not see him and did not stop the car until the police officer on the platform saw that the motorman had not seen him and called to the motorman to stop; and it was too late then to give the boy warning or to stop the car before hitting him. There is testimony that prior to the accident, when the officer saw the boy leaving the sand pile and going in a southwesterly direction, the motorman was looking at the coin box in the front of the car, and thus had his attention distracted from the observation of the highway. While the motorman was under no duty to be excessively vigilant in the middle of the block and could rely upon the natural inclination toward safety upon the part of even young children, yet it may have been negligent conduct in the judgment of the jury for him to fail to apprehend the possibility of a person crossing in the middle of the block, and to neglect to be somewhat more vigilant about the likelihood of someone approaching from the curb as he moved from crossing to crossing. It is certain that if he had been as vigilant as the policeman, who had no duty on the forward part of the car, he would have observed this child leaving the sand pile and approaching the easterly rail of the track on which his car was moving, and that, if so observant, he might have warned the child by bell or signal of the approaching car. It is asserted in extenuation of the motorman's conduct that the police officer apparently did not expect the child to step upon the rail, or else he surely would have warned the motorman of the child's approach before the accident happened, since he saw the child leave the sand pile in time to give the motorman warning of the possibility of the child's approaching the track, and that this conduct of the police officer indicated the measure of reasonable care the motorman would have taken if he had seen the child. This argument, however, excludes the consideration that there was no duty upon the part of the police officer to observe the highway for the purpose of stopping the car, and that he was justified in assuming that the motorman was observing the roadway sufficiently to guard against this impending danger to the infant until it became an inevitable conclusion that he was not so regarding the danger. If the catching of the child's foot was the cause of the accident, and he would have gotten over the track safely except

for this occurrence, we cannot conclude that the company's receiver could be held liable for the failure of the motorman to anticipate the possibility of his catching his foot in the rail, since there is no proof that there was any unusual condition of the rail at that point which might cause such an event and which ought to have been anticipated by the motorman of the car in a reasonable exercise of the care he was required to give; nor was there shown any special notice to the company's receiver that the rails at that point were defective, of which defect he should have given warning to the employees so that they might guard against its existence.

The case was submitted to the jury on the plaintiff's proof, which contains both these versions of the happening of the accident to the child. If the jury found that the motorman was negligent in not observing the boy when he left the sand pile because of his looking at the coin box, and in thus failing to take such reasonable care as the possibility of his moving into the area of the moving car required, then there would be warrant for upholding the verdict upon that theory. On the other hand, if the jury concluded that the motorman was negligent in not anticipating the possibility of the child being caught in the track and thus being unable to move in front of the car and escape being struck, there can be no justification for the finding of negligence on that theory, since in the natural order of events the boy would very likely have gotten across the track without being struck, and except for his foot having been caught in the rail would not have been endangered.

It is not possible to determine upon which theory of alleged negligence the jurors found the motorman guilty, and, therefore, the judgment must be reversed because the finding upon one theory that the motorman was negligent would have been error.

There is no doubt that a motorman cannot be considered careless, although he fails to see a child or pedestrian of any age between crossings, if he would not have struck him in the exercise of reasonable care if some unusual event had not intervened between his beginning to cross the tracks and his being struck, such as tripping and falling or being caught in the rails or the pavement, or in some other manner having his progress impeded. This is so because the proximate cause of his being struck was not that the motorman failed to observe him, but that he was arrested in his progress by some intervening cause over which the motorman had no control, which he could not anticipate, and for which he was not responsible. The rule would vary at a regular street crossing where the motorman is obliged to be vigilant for the travel of pedestrians who are expected to be in that part of the highway.

The judgments should, therefore, be reversed and a new trial

ordered, so that this matter may be presented to a jury in this light.

The question of an excessive verdict is not raised in respect of the infant's award at $15,000, but it is asserted urgently that $5,000 was entirely too great a sum to award the father for the loss of the infant's services. We think this is a correct charge of error, and that $1,500 would have been ample for the father's verdict, but since we must reverse upon the question of failure to prove negligence in one aspect of the case which went to the jury, we merely advert to this question of the father's damages for guidance upon a new trial.

The judgments and orders should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgments and orders reversed and new trial ordered, with costs to the appellant to abide the event.